Argued and submitted December 9, 1980, affirmed February 3,
reconsideration denied March 12,
petition for review·denied April 21, 1981 (290 Or 853)

BARTLAM,
*Respondent,*

*v.*

TIKKA et al,
*Appellants.*

(No. A7906-02690, CA 17278)

622 P2d 1133

Ridgway K. Foley, Jr., Portland, argued the cause for appellants. With him on the briefs were Katherine H. O'Neil and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Frank M. Parisi, Portland, argued the cause for respondent. With him on the brief were Robert J. Vanden Bos and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

In this action on a promissory note, defendants appeal the trial court's granting of plaintiff's motion for summary judgment, contending (1) that the contract to which the promissory note is subject is ambiguous and what the parties intended is a material issue of fact, and (2) even if not ambiguous, the contract does not express the intention of the parties and should be reformed. We affirm.

The underlying facts are uncontroverted. On December 22, 1976, defendants executed a contract for the purchase of all of the stock of Oregon Marine Supply Co.; plaintiff was one of the selling shareholders. On the same date, as part of that transaction, defendants executed a promissory note for $2,500 payable to plaintiff, which, by its terms, was made "subject to the terms and conditions" of the contract, Section 7 of which provided the exclusive remedy to defendants for breach of certain representations or warranties set forth in Section 5 of the agreement. Section 7 provided, in part:

"7. *Remedies*

"In the event any of the representations and warranties of Corporation set forth in Section 5 shall not be true in all material respects and *Buyers shall give Shareholders written notice thereof on or before December 31, 1977,* then Shareholders shall cancel and deliver to Buyers the promissory notes set forth in Section 1 above and Buyers shall assign and deliver to each respective Shareholder, free and clear of all liens and encumbrances, all shares of common stock, and the products and proceeds of such stock, sold to Buyers under the terms of Section 1 hereof and Buyers and Shareholders shall have no further obligations with respect to the sale of such stock as provided herein. * * * "

On December 31, 1977, defendants sent by certified mail a letter seeking to invoke the remedies provided by Section 7 on the ground that there had been certain misrepresentations and breaches of warranties. Plaintiff received the letter on January 2, 1978.

On September 28, 1978, plaintiff made a written demand upon defendants for payment of the promissory note and, when defendants refused to pay, filed this action to effect collection. By amended answer and counterclaim, defendants (1) alleged that their letter mailed December

31, 1977, revoked the agreement and thereby cancelled the note and, (2) asserted a counterclaim for reformation of the agreement on the ground that the agreement does not correctly reflect the intention of the parties in that Section 14 thereof was intended to apply to notices given by them as well as the corporation and its shareholders.

Plaintiff had filed a motion for summary judgment prior to the filing of the amended answer and counterclaim, contending that she was entitled to judgment as a matter of law. In a supporting affidavit, plaintiff asserted that she had not *received* defendants' written notice by December 31, 1977, as required by Section 7 of the agreement, from which fact it was argued that the attempt by defendants to exercise their remedy under that provision was ineffective.

Defendants' opposing affidavits do not dispute the fact that their notice was not received by plaintiff on December 31; rather, they assert that the parties intended that the provisions of Section 14 apply to any notice given by any of the parties. That section provides, in part:

"14. *Notice*

"All notices, requests, demands and other communications *given by Corporation or any selling Shareholders* shall be in writing and shall be deemed to have been totally given if delivered personally or sent by registered or certified mail, postage prepaid, to the following address:

"* * * * * [Addresses omitted.]" (Emphasis supplied.)

If that provision applies to the notice required by Section 7, defendants' notice was timely.

■■ Defendants first contend that the contract is ambiguous and should be construed to reflect the intention of the parties. Second, they contend that if it is not ambiguous, it should be reformed. Whether a contract is ambiguous is a question of law for the court; if the court determines that it is ambiguous, evidence tending to show the intention of the parties is admissible, leaving the intended meaning of the ambiguous terms to the trier of fact. *Chambers v. School Dist. No. 40,* 22 Or App 463, 466, 540 P2d 1026 *rev den* (1975). Ambiguity is the effect of words that have either no definite sense or have more than one, causing the meaning of the writing to be "not so clear as to preclude doubt by a reasonable man of its meaning."

*Chambers v. School District No. 40, supra; May v. Chicago Insurance Co.,* 260 Or 285, 293, 490 P2d 150 (1971) (quoting 4 Williston, Contracts, §§ 649, 652, 660-63, (3d ed 1961).

■■ In support of their contention, defendants argue that the phrase "give, * * * written notice" in Section 7 is ambiguous as to the time written notice becomes effective and is consistent with setting the date of mailing as the controlling time. Settled law, however, does not support that proposition. Absent statutory authority or agreement by the parties, deposit of a notice in the mail is not effective as notice, unless it is received. *Stroh v. SAIF,* 261 Or 117, 119, 492 P2d 472 (1972). More specifically, we have held that "give written notice" is not synonymous with "send" or "mail," but denotes *delivery* of a written communication. *Wallis v. Crook County School Dist.,* 13 Or App 174, 180, 509 P2d 44 (1973). Section 7, then, is unambiguous and required the notice to be given — that is delivered — by December 31.

If there is any ambiguity, it must be one created by reading Sections 7 and 14 together, as defendants contend we must. Although that argument is appealing, when those two sections are read together and in the context of the entire agreement, the distinction between the two types of notices, and the reasons therefor, become more apparent. Section 7 contains the only contractual remedies the defendants have if the representations and warranties of the plaintiff (and other sellers) set forth at length in Section 5 turn out to be untrue or are breached: in essence, defendants may cancel the transaction, including the promissory notes defendants executed in favor of sellers, on one of which this action is based. Because the notice required to accomplish that result is fundamental to the entire agreement, it is reasonable that the sellers should require that they actually receive the notice by the specified date, after the expiration of which the transaction is either cancelled or is to be carried out according to the terms of the agreement.

■ On the other hand, notices controlled by Section 14 relate to the contract provisions dealing with those to be given by the shareholders or by the corporation of a more

routine or ministerial nature to assure the orderly performance of the contract. We conclude that reading the two sections together does not create an ambiguity.

■    Defendants' contention that they are entitled to reformation of the contract is based on the proposition that it "does not correctly reflect the intentions of the parties." Defendants' affidavits in opposition to the motion for summary judgment show, at most, only a unilateral mistake on their part. They do not establish the necessary elements of a unilateral mistake which allow avoidance of a contract: (1) that there was a mistake basic to the contract that was known to plaintiff; or (2) that the circumstances are such that the other party, as a reasonable person, should have known of the mistake. *Gardner v. Meiling,* 280 Or 665, 674, 572 P2d 1012 (1977).

■    In addition to their affidavits, defendants submitted their deposition of plaintiff in support of their reformation claim. The most that can be said of that deposition is that the plaintiff did not intend for the agreement to be one-sided; however, she had no knowledge concerning the notice provisions. She did not participate in the negotiating sessions relating to the drafting of the agreement, and did not see the agreement until it was completed, whereupon it was sent to her. Accordingly, accepting as true defendants' contention that they understood all of the parties had the same notice requirements, they are not entitled to reformation.

The trial court did not err in granting the plaintiff's motion for summary judgment.

Affirmed.