Argued and submitted February 2, affirmed October 12, 1994, petition for review denied January 24, 1995 (320 Or 507)

BUSINESS MEN'S SERVICE CO.,
an Oregon corporation,
*Respondent,*

*v.*

Daniel F. OBRIST,
aka Dan Obrist,
dba Dan Obrist Trucking & Excavating,
aka Dan Obrist Trucking and Excavating,
*Appellant.*

(92C773213; CA A79918)

883 P2d 219

Robert J. Miller, Sr., argued the cause for appellant. With him on the brief were Brien F. Hildebrand and Moomaw, Miller & Reel.

Jeffrey I. Hasson argued the cause for respondent. With him on the brief was Hasson & Zimmerman.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff Business Men's Service Co. filed this action as assignee of Metropolitan Service District (Metro) to collect overdue finance charges that defendant owed to Metro. The trial court entered judgment in favor of plaintiff. We affirm.

■ We recite the facts in the light most favorable to plaintiff, who prevailed at trial. *Williams v. Leatham*, 55 Or App 204, 207, 637 P2d 1296 (1981), *rev den* 292 Or 581 (1982).

Defendant owns an excavation business. In May, 1988, Metro agreed to provide defendant disposal services on a credit basis. The parties' agreement states:

"Disposal on a credit basis shall be controlled by the credit policy for Metro Solid Waste Disposal Facilities, as revised. Pursuant to that policy, failure to pay account charges may result in assessment of a finance charge, suspension of credit and denial of access to the disposal facility."

The credit policy to which the agreement refers provides:

"(b) For purposes of this section, the following definitions shall apply:

"(1) Account charges are 'due' on or before the last day of the month billed and are 'past due' thereafter.

"(2) Account charges are '30 days past due' on the first day of the month following billing.

"(3) Account charges are '45 days past due' on the fifteenth day of the month following billing.

"(4) Account charges are '60 days past due' on the first day of the second month following billing.

"* * * * *

"(d) A finance charge of one and one-half (1-1/2) percent per month (18 percent per annum), computed from the date an account becomes thirty (30) days past due, will be assessed on all accounts which become sixty (60) days past due and will be added to the oldest months [*sic*] charges past due."

Metro billed defendant for services provided. When defendant's account became "60 days past due," Metro assessed finance charges. Defendant refused to pay the finance charges. Metro assigned its claim to plaintiff, who

then initiated this action to collect the finance charges. Defendant responded with a general denial, and the case proceeded to trial.

Before trial, plaintiff moved to exclude "all evidence of * * * the procedures of people or companies other than Metro as they relate to finance charges" and "all evidence of how and when defendant thought finance charges were assessed." Plaintiff argued that, because the agreement with Metro is unambiguous, such extrinsic evidence is inadmissible. Defendant opposed the motion, arguing that, because the agreement is ambiguous, the extrinsic evidence is admissible. According to defendant, the agreement poses at least two ambiguities that require resolution by a jury. First, defendant argued that the agreement said only that Metro "may" assess a finance charge, not that it actually would do so. Second, defendant argued that the contract ambiguously defined "60 days past due" accounts to include accounts that are not really 60 days past due. Defendant also argued that the jury should be allowed to hear evidence that, following a notice from Metro that his account had fallen past due, he had a conversation with a Metro employee in which he

"explained to him at that time [that] he was doing work for the state and the state was slow in paying and that Metro employee said he understood that he had worked with the state before and not to worry about the account at that time. That there was no mention of any finance charges or that there would be any finance charges * * *."

The trial court decided that the agreement was "incredibly unambiguous" and granted plaintiff's motion to exclude the extrinsic evidence. On the basis of that ruling, the trial court determined that there remained only two issues to be tried, namely, the meaning of the unambiguous terms and the amounts actually paid according to those terms. The trial court determined the first issue as a matter of law, and defendant offered no evidence on the second issue. Plaintiff presented a *prima facie* case. Defendant presented an offer of proof on the extrinsic evidence. The trial court then found, on the basis of the unambiguous terms of the agreement and the undisputed evidence, that defendant owed plaintiff $2,058.87 in unpaid finance charges and entered judgment in plaintiff's favor for that amount.

On appeal, defendant assigns error to the trial court's exclusion of extrinsic evidence as to the meaning of the agreement with Metro and its failure to submit the case to a jury. Defendant argues that the agreement was ambiguous and, therefore, a jury should have been allowed to hear the extrinsic evidence and to construe ambiguities in the agreement in the light of that evidence. Plaintiff argues that the trial court did not err, because the agreement is unambiguous, and there were no issues of fact for a jury to resolve. We agree with plaintiff.

██    Whether an agreement is ambiguous is a question for the court. *Mann v. Wetter*, 100 Or App 184, 188, 785 P2d 1064, *rev den* 309 Or 645 (1990); *Bartlam v. Tikka*, 50 Or App 217, 220, 622 P2d 1133, *rev den* 290 Or 853 (1981). If the contract terms are unambiguous, the court construes the contract as a matter of law. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978). A term is ambiguous if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation. A term is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985).

██    As he did at trial, defendant argues on appeal that his agreement with Metro is ambiguous in two respects. First, defendant contends that it is unclear whether a finance charge could be imposed. According to defendant, the agreement states that a "failure to pay account charges may result in assessment of a finance charge," not that a finance charge *will* be imposed.

Defendant, however, ignores the balance of the sentence from which the portion he quotes is extracted. The agreement says that the extension of credit is controlled by Metro's credit policy, and *"[p]ursuant to that policy*, failure to pay account charges may result in assessment of a finance charge." (Emphasis supplied.) The Metro policy then explains that, as long as an account is fewer than 60 days past due, no finance charge will be assessed. However, the policy then says "[a] finance charge * * * *will be assessed on all accounts which become sixty (60) days past due* * * *." (Emphasis supplied.) No reasonable person could doubt the

meaning of that language. It means what it says: If an account becomes 60 days past due, a finance charge "will be assessed."

■ Second, defendant argues that the Metro policy definition of when finance charges will be assessed is ambiguous. The language of the Metro policy, incorporated by reference, calls for the assessment of a finance charge on all accounts that become "(60) days past due." The policy says that an account becomes "60 days past due" on "the first day of the second month following billing." That means that, if a bill is mailed out in January, with a due date of January 31, it is considered "60 days past due" on the first day of the second month following billing, that is, March 1. Thus, under the terms of the agreement, an account actually paid 30 days after the due date is considered "60 days past due." That, argues defendant, is too strange to be considered unambiguous.

The language of the agreement, and its definition of "60 days past due," is quite clear. Defendant offers no other construction of it. He simply asserts that "60 days past due," at least arguably, means "60 days past due," not 30. That construction, however, cannot be sustained without completely ignoring the language defining the term to mean something other than what defendant asserts. The trial court correctly concluded that the agreement is unambiguous.

■ Defendant argues that, in any event, a jury should have been allowed to hear evidence of his conversation with the Metro employee about whether Metro had agreed not to assess the finance charges. We disagree.

To begin with, the offer of proof contains no evidence that Metro agreed to waive the imposition of a finance charge or to otherwise modify the agreement. To the contrary, according to defendant's own offer of proof, the subject of finance charges was never raised, much less discussed.

Moreover, avoidance of the finance charge, by waiver or similar theory, is a matter that must be affirmatively pleaded. ORCP 19B; *Pacificorp v. Union Pacific Railroad*, 118 Or App 712, 717, 848 P2d 1249 (1993). Defendant's answer contains only a general denial of the allegations in plaintiff's complaint. Under the circumstances, the trial

court did not err in refusing to permit a jury to hear evidence of the subsequent discussion with the Metro employee.

Affirmed.